UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

-------------------------------------------------------X
REBECCA ATTARD,

                         Plaintiff,

    -against-

THE CITY OF NEW YORK and THE BOARD
OF EDUCATION OF THE CITY OF NEW
YORK,

                         Defendants.
-------------------------------------------------------X

**MEMORANDUM AND
ORDER**

05 CV 2129 (JG) (RML)

LEVY, United States Magistrate Judge:

           Defendants the City of New York and the Board of Education of the City of New

York ("defendants") move pursuant to Federal Rule of Civil Procedure 59(e)[1] and Local Civil

Rule 6.3 for reconsideration of this court's May 5, 2008 order granting in part plaintiff's Second

Motion for Sanctions. (See Memorandum and Order, dated May 5, 2008 ("the Order").) For the

reasons provided below, defendants' motion for reconsideration is denied.

<h2 align="center">BACKGROUND[2]</h2>

           Plaintiff filed her age discrimination case in this court on May 3, 2005. I set an

initial discovery deadline of February 15, 2006. (See Order, dated July 25, 2005.) Over a month

after the deadline had passed, defendants' counsel informed the court that she had

---

      [1] Rule 59(e) F.R.C.P. applies to motions to alter or amend "a judgment" and must be filed
within ten days after entry of judgment. As the May 5, 2008 Order was not a judgment, the Rule
is inapplicable. Defendants have not argued to the contrary or even addressed this issue. In any
event, because, as explained below, the motion was filed more than ten days after the Order was
entered, it is untimely.

      [2] This discussion reiterates only those events which directly relate to the current motion.

"inadvertently neglected to properly calendar the discovery completion date" and as a result

needed an extension of time to complete discovery. (First Motion for Extension of Time to

Complete Discovery, dated Mar. 17, 2006.) Plaintiff consented. I set a new discovery deadline

of September 29, 2006. (See Order, dated Mar. 21, 2006; Order, dated Apr. 4, 2006.) On

September 29, 2006, plaintiff moved to extend the discovery deadline, asserting, *inter alia*, that

she could not serve her expert report because defendants had failed to answer document requests

and interrogatories served in August that were "necessary for [her] expert to write an opinion

letter." (See Letter from Gregory Antollino, Esq. to Magistrate Robert M. Levy, dated Sept. 29,

2006 (stating that because "discovery had [not] been obtained . . . . and no date is in sight,

[plaintiff] must ask for more time . . . . as well as an order directing the City to respond to the

unanswered demands").) Defendants' counsel did not respond. At a status conference held on

October 11, 2006, I ordered defendants to answer plaintiff's outstanding discovery requests by

November 30, 2006 and extended fact discovery to January 31, 2007. I granted this lengthy

extension to accommodate defendants' counsel, who agreed to these dates. (See Order, dated

Oct. 11, 2006; see also Order, dated Oct. 10, 2006.)

      November 30 came and went, and still defendants did not respond to plaintiff's

discovery demands or request an extension. Plaintiff's counsel then contacted defendants'

counsel, who told him on December 9, 2006 that she had again forgotten the court-ordered

deadline. She asked plaintiff to agree to another extension.[3] Plaintiff's counsel refused, and

---

    [3] Defendants' counsel also told plaintiff's counsel on December 9, 2006 that, regardless, she could not provide the data at that time because the person at the Board of Education who was compiling the information was out sick. However, according to plaintiff's counsel, "when pressed for the dates this person was out sick, [defendants' counsel] was unable to provide detail." (See First Motion for Sanctions, dated Dec. 14, 2006, 1-2.)

defendants' counsel again failed to seek an extension from the court.  (See First Motion for Sanctions, dated Dec. 14, 2006 ("First Motion").)

Finally, on December 14, 2006, plaintiff moved to sanction defendants for violating the October 11, 2006 Order.  (See First Motion.)  In her motion, plaintiff noted that her case depended on expert analysis of statistical data that only defendants could provide.  Seven weeks passed, but defendants inexplicably never responded to the First Motion.  Accordingly, I partially granted the First Motion and ordered, consistent with Rule 36 of the Federal Rules of Civil Procedure, that "any and all properly served Requests for Admission for which defendant[s] ha[ve] not raised a timely objection are deemed ADMITTED."  (See Order dated Jan. 31, 2007  ("First Sanction Order").)  In the order, I expressly noted that "[d]efendant[s] ha[ve] waived [their] objections to the discovery demands, defaulted on the Motion, and failed to comply with a court order carefully designed, with the participation of both parties, to ensure defendant[s] had sufficient time to fulfill [their] discovery obligations."  However, I denied plaintiff's request to strike the answer or, in the alternative, to preclude defendants from contesting plaintiff's statistical evidence and direct that the conclusions of plaintiff's experts be deemed true as a matter of law.  (See id.)

On February 27, 2007, I extended discovery to June 30, 2007, scheduled a conference for March 20, 2007, and ordered the parties to meet and confer to resolve any lingering disputes.  (See Order, dated Feb. 27, 2007.)  On March 20, 2007, plaintiff submitted a letter detailing opposing counsel's alleged failure to meet and confer as directed at the February 27, 2007 conference.  Plaintiff asked for additional sanctions, including striking defendants' answer, in the event defendants did not produce the outstanding documents and statistical data

-3-

within 14 days.  (See Letter from Gregory Antollino, Esq., Concerning Events Since Last

Conference, dated Mar. 20, 2007 (stating that "(a) defendants have now defaulted on several

promised dates to answer my demands of last summer; (b) defaulted on a sanctions motion; (c)

been sanctioned; (d) . . . sought to [assert] objections to requests for admission that had already

been deemed admitted as a matter of law [; and failed to meet and confer].").)  Plaintiff

simultaneously filed another letter along with a copy of defendants' discovery responses,

complaining that defendants had not produced the materials deemed admitted in the First

Sanction Order.  (See Letter from Gregory Antollino, Esq., with Complete Documents Submitted

in re Plaintiff's 2nd and 3rd Combined Demands, dated Mar. 20, 2007; see also First Sanction

Order.)

Defendants' counsel failed to appear at the March 20, 2007 discovery conference,

and did not request an adjournment.  Accordingly, I ordered her to explain her absence and

respond to plaintiff's March 20, 2007 letter by April 11, 2007.  (See Order, dated Mar. 20, 2007.)

I also ordered the parties to attend a status conference on April 12, 2007.  (See id.)  In a

confidential letter, defendants' counsel informed the court that a serious family emergency had

arisen and prevented her from attending the March 20, 2007 conference.  (See Order, dated Apr.

2, 2007.)  As a result, defendants' counsel did not attend the April 12, 2007 conference in

person but was permitted to appear by telephone.[4]  However, nothing substantive could be

_____

[4] In their Motion for Reconsideration ("Defs. Mot."), defendants contend that the Order
erred in stating that "[d]efendants' attorney did not attend the [April 12, 2007] status conference
due to an emergency. . . ."  (Order at.4.)  As the docket entry for April 12, 2007 reflects,
plaintiff's counsel was present for the conference, but defendants' counsel in fact did not attend,
as she was "out of state due to an emergency." The Order should have made clear that
defendants' counsel appeared at the conference by telephone with the court's permission.
However, the Order did not state, or intend to suggest, that defendants' counsel unilaterally

-4-

accomplished because of her emergency, and the parties were directed to submit status reports the following week.  She also notified plaintiff and the court on April 19, 2007 that she required two additional weeks to update the court on outstanding discovery issues.  At the next conference, I extended discovery to September 30, 2007.  (See Order, dated May 18, 2007.)  I also urged counsel to obtain assistance from her office in the event the burdens of her family situation made it difficult for her to meet her obligations in this case.  Defendants, however, still had not produced the statistical information that plaintiff requested in August 2006.  At a status conference held on June 26, 2007, I ordered that, by July 13, 2007, defendants must either produce the information requested in August 2006 or submit an affidavit explaining why they could not do so.  (See Order, dated June 26, 2007.)  Defendants did neither and failed to move for an extension.  Nonetheless, at a conference held on July 13, 2007, I afforded defendants yet another extension, ordering them to produce the statistical data no later than July 27, 2007.  (See Order, dated July 13, 2007.)

On October 31, 2007, plaintiff's counsel  requested an adjournment of a settlement conference scheduled for November 14, 2007.  He reported that the statistical data that defendants finally provided contained substantive errors – such as listing several hundred New York City public school teachers as over eighty and ninety years old or under eighteen – and that plaintiff needed a brief, thirty-day extension to, *inter alia*, compensate for these

---

excused herself from personally attending the April 12, 2007 conference.  Notwithstanding, this oversight had absolutely no effect on the outcome of the sanctions motion.  The Order did not fault counsel for not attending the April 12 conference in person or cite it as an instance where she violated a court order or failed to appear or request an adjournment.  As mentioned above, the April 12, 2007 minute entry simply noted that she had an emergency on April 12, 2007 and requested additional time to update the court on outstanding discovery issues.

deficiencies and produce an expert report.  (See Motion to Adjourn Conference, dated Oct. 31,

2007.)  Plaintiff's counsel hoped to be able to use the data, despite its flaws, to generate an

abbreviated expert report to respond quickly to defendants' request for a settlement demand.  He

noted he was "getting another disk from the City so that my expert will either get better data or

work with what she has" but warned there was a "remote possibility" he "may have to ask for

corrected data."   Nearly a month later, plaintiff's counsel informed me that the data were

flawed and that the expert he had retained could not perform a proper analysis.  (See Motion to

Adjourn Conference, dated Nov. 30, 2007 ("Nov. 30 Mot.") .)  Defendants' counsel agreed that

the data were flawed.  (See Nov. 30 Mot. Ex. A.)[5]

      Citing defendants' protracted delays in complying with plaintiff's discovery

requests and significant deficiencies in the data defendants ultimately produced, plaintiff filed a

Second Motion for Sanctions on February 15, 2008.  Defendants failed to serve plaintiff with a

complete response, leading plaintiff to file a Third Motion for Sanctions on March 6, 2008.

Defendants did not respond, but on March 7, 2008 finally provided plaintiff with new data.[6]

---

[5]  In his November 30 letter, plaintiff's counsel requested an adjournment of the
December 10, 2007 settlement conference for several reasons, noting that he would be on trial
before Judge Sifton that day, and that, if the case did not settle, he would need additional time to
complete discovery because of the flawed data defendants had provided.  Because obtaining
corrected data would inevitably cause more delay and plaintiff did not expect a response to her
settlement demand until after Christmas, plaintiff's counsel asked that the settlement conference
be adjourned to early January.  Plaintiff's counsel warned, however, that he would seek
sanctions if the case did not settle.

[6]  As he was leaving his office at 5:10 p.m. on Friday, March 7, 2008, plaintiff's counsel
reported that he had not received the data.  He later advised the court that updated data arrived
after business hours that day.  (See Letter Regarding Status of Motions and Potential Lack of
Need for a Conference, dated Mar. 10, 2008; Order, dated Feb. 22, 2008.)  Plaintiff's counsel did
not indicate in his letter whether this data production corrected the flaws present in the previous
submissions or was sufficiently accurate for his expert to write a report.  (See Letter Regarding

(See Letter from Gregory Antollino, Esq., Regarding Status of Motions, dated Mar. 10, 2008.) On May 5, 2008, the court granted in part and denied in part plaintiff's Second Motion for Sanctions, and denied plaintiff's Third Motion for Sanctions.

Defendants now move for reconsideration on essentially four grounds. First, they contend that the errors in the statistical data defendants produced were not as pervasive or significant as the Order suggested. Second, they assert that the court overestimated the degree to which plaintiff was prejudiced or even concerned about those errors and their effect on the case. Third, they argue that the court mistakenly concluded that defendants did not produce corrected data on March 7, 2008. Finally, they note that defendants' counsel did not miss the conference held on April 12, 2008 and apologized for her absence from the March 20, 2008 conference, which resulted from family medical emergencies.

In opposition, plaintiff points out that defendants' motion was improperly brought under Rule 59(e) of the Federal Rules of Civil Procedure and, in any event, is untimely under both Rule 59(e) and Local Civil Rule 6.3. She insists that she was and continues to be prejudiced by, and concerned about, defendants' pervasive discovery delays and the errors in the data defendants have produced. She disputes that corrected data have been produced and argues that, despite her sympathy for defendants' counsel's family medical problems, counsel should have sought – and her supervisors should have provided – assistance in meeting her professional obligations. In plaintiff's view, defendants' underlying conduct merited far worse sanctions.

### Standard of Review

A court generally will not grant a motion for reconsideration "unless the moving

---

Status of Motions and Potential Lack of Need for a Conference, dated Mar. 10, 2008.)

party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court" in the challenged decision.  Shrader v. CSX Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citing Schonberger v. Serchuk, 742 F. Supp. 108, 119 (S.D.N.Y. 1990); Adams v. United States, 686 F. Supp. 417, 418 (S.D.N.Y. 1988)).  The court will deny the motion if "the moving party seeks solely to relitigate an issue already decided."  Id.

## DISCUSSION

Local Rule 6.3 states that "[a] notice of motion for reconsideration . . . of a court order determining a motion shall be served within ten (10) days after the entry of the court's determination of the original order."  E.D.N.Y. Local Civ. R. 6.3.  I entered the order at issue on May 5, 2008.  It is undisputed that defendants did not file their motion for reconsideration until May 20, 2008, the day after the deadline passed.[7]  Defendants did not request an extension to file the motion out of time.  Nor did defendants address the ten day requirement in their motion or their reply, despite plaintiff's insistence in her opposition that the motion must be dismissed as untimely.[8]  Because defendants failed to file within ten days, the motion must be denied.  See Patsy's Italian Rest., Inc. v. Banas, No. 06 CV 0729, 2008 WL 926401, at *2 (E.D.N.Y. Apr. 3, 2008).  However, even if defendants had filed in a timely manner, their motion would still be denied for the reasons given below.

---

[7] According to the electronic docket receipt, defendants filed their motion for reconsideration at 12:20 a.m. on May 20, 2008.

[8] Although defendants had ample opportunity to contest or raise defenses to the untimeliness of their motion, they failed to do so.  Instead, they ignored the issue altogether.  Accordingly, the court deems any defenses they might have raised to have been waived.

The history of this litigation presents a pattern of missed deadlines and lengthy delays that have prevented plaintiff from completing her expert report and bringing this case to trial. The court views sanctions as a last resort and has attempted to be measured in its response. Earlier in this case, I granted plaintiff's first motion for sanctions after defendants ignored court-ordered deadlines and failed to respond to the sanctions motion. Despite the First Sanction Order, defendants again missed court-ordered deadlines and, on occasion, failed to seek an extension. Finally, defendants produced flawed data that plaintiff's expert could not use. The Order reflects this pattern of conduct, culminating in the production of concededly deficient data.[9] As plaintiff has repeatedly noted, her case turns on statistical data that it took defendants over 18 months to produce.

Defendants contend that the Order mischaracterized the flaws in the statistical data by using the adjectives "voluminous" and "many" rather than the more accurate "some," the term plaintiff first used to describe the errors. (See Defendants' Motion for Reconsideration ("Defs. Mot.") 2; see also Motion to Adjourn Conference, dated Oct. 31, 2007.) The court's choice of adjectives, whether felicitous or not, is beside the point. It is undisputed that (1) defendants produced flawed data; (2) the flaws were substantial enough to prevent plaintiff's expert from completing her expert report; and (3) neither defendants nor defendants' counsel advised plaintiff of these errors before the data were produced. Thus, plaintiff and her expert found "hundreds of teachers who were listed as working into their eighties, with many more in their seventies." (Nov. 30 Mot.) After hearing plaintiff's complaints, defendants' counsel

---

[9] Despite the volume of the data, the errors were of a nature that they could be detected by a lay person performing a careful review, as demonstrated by defendants' counsel who, after having been alerted to the deficiencies, examined the documents and discovered errors herself.

apparently examined the data herself and found even more errors, "including many supposed tenured teachers who were in their teens." (Nov. 30 Mot.) She acknowledged to plaintiff's counsel that "[i]t appears that the birth dates provided to you are not correct." (Nov. 30 Mot. Ex. A.) Defendants now attempt to downplay the materiality of these errors by asserting that they "constitute a statistically insignificant 0.0012% error rate." (Defs. Mot. 3.)

This argument does not withstand scrutiny. First, it is improper in a motion for reconsideration, as defendants are not presenting data that the court overlooked in its original decision. In the briefing of the Second Motion for Sanctions, there was no substantial disagreement over the nature and extent of the errors, and the court adopted the facts in the record. Asserting that the task of assembling the data was difficult, the errors were unintentional, and corrective action was underway, defendants did not argue–much less attempt to prove–that plaintiff's expert could have undertaken a statistically accurate analysis of the school-wide data as originally produced. To the extent defendants now argue that the errors constitute a "statistically insignificant error rate of 0.0012%," this is a new argument that cannot be raised in a motion for reconsideration. Moreover, even if timely raised, this argument would be of dubious value, as it was offered as an assertion by counsel in a letter brief without scientific or expert support. Nor have defendants demonstrated why plaintiff's expert is incorrect in concluding that the admitted flaws in the data prevented her from analyzing the school-wide statistics defendants provided and preparing a scientifically sound report.[10]

---

[10] The Federal Rules of Civil Procedure place the burden of providing complete and accurate discovery production on the party producing the documents. This burden applies to electronically stored data as well as paper documents. See Fed. R. Civ. P. 26(e)(1); Fed. R. Civ. P. 37(a), (b) & Advisory Committee Notes. That defendants believe the errors in the data to be "statistically insignificant" does not release them from this burden, especially when plaintiff's

Finally, the court is acutely aware of the tragic events that recently have affected the family life of defendants' counsel and, as reported by counsel, limited her performance in March and April of 2007. The court did not, and would not, penalize her for any missed conferences or other delays that stemmed from these circumstances.[11] Defendants were afforded numerous opportunities to satisfy their duties to plaintiff and the court before sanctions were imposed. Defendants' counsel was invited to seek additional support when her personal hardships made it difficult for her to meet deadlines. It is immaterial whether the responsibility lay with defendants' attorney or her supervisors. Ultimately, the cumulative impact of the conduct described above made sanctions necessary.

## THE SANCTION

The Order directs defendants to pay the "reasonable expenses that plaintiff incurred in hiring an expert witness to examine defendants' inaccurate statistical data," as well as the "reasonable costs" of hiring an expert witness to examine the corrected information and all "reasonable attorney's fees and costs" plaintiff has expended to enforce her right to discovery following the first order of sanctions in this case. In her reply letter in support of her motion for reconsideration, defendants' counsel reproduced an excerpt from an email she received from plaintiff's counsel in which he warned that "the outcome of [the Order] will cost the City a minimum of $100,000." (See Letter from Cindy Switzer, Esq. to Honorable Robert Levy, dated

---

expert has objected that the errors rendered the data unusable. (Defs. Mot. 3; see Nov. 30 Mot.)

[11] The court, however, was dismayed at the publication of the Order in the New York Law Journal, which identified defendants' counsel by name. Had the court known that a party intended to submit an otherwise routine sanctions decision for publication, it would have redacted the name of defendants' counsel and any reference to her personal circumstances.

June 2, 2008.)  The Order is not intended to create a windfall for plaintiff or plaintiff's counsel, nor does it constitute a license for extravagant costs or fees.  The court emphasizes that the sanctions are real, but they serve only to reimburse plaintiff's reasonable costs and fees.

## CONCLUSION

Defendants untimely submitted their motion for reconsideration in violation of Local Rule 6.3 of this court.  For this reason alone, the motion should be denied.  However, after examining defendants' arguments on the merits, I find no basis to revise my ruling.  The Order addresses a pattern of neglect and discovery violations that has beset this litigation since its inception and takes into account that an earlier, lesser sanction proved insufficient.  The resulting delays and unnecessary expenditure of resources have worked a hardship on plaintiff and postponed her day in court.  This sanction is calibrated to shift the reasonable cost of defendants' neglect back to defendants.  Its effect is purely monetary; it does not preclude evidence, dismiss claims, or create an adverse inference.  The motion is denied.

As the parties' respective submissions indicate, they appear to disagree whether defendants have produced fully corrected data.  The parties are directed to submit a status report addressing this issue no later than August 18, 2008.

SO ORDERED.

Dated:  Brooklyn, New York
　　　　 August 7, 2008

_____
　　　　 /s/
ROBERT M. LEVY

-12-

United States Magistrate Judge